IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZEYNA RODRIGUEZ, | : | |
| INDIVIDUALLY AND AS PARENT | : | CIVIL ACTION |
| AND NATURAL GUARDIAN OF | : | |
| JOHN DOE, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| DEPARTMENT OF | : | |
| HUMAN SERVICES, et al., | : | No. 14-187 |
|     Defendants. | : | |

### MEMORANDUM

Schiller, J.                                                                                                                March 6, 2014

      The City of Philadelphia Department of Human Services ("DHS") and its Commissioner, Anne Marie Ambrose, published a picture of Zeyna Rodriguez and her minor son in an annual report. The photo was published without Zeyna's permission. Plaintiffs claim that publishing the photo without permission caused great psychological harm to their family. They brought a claim under 42 U.S.C. § 1983 as well as various state law invasion of privacy claims. Defendants filed a motion to dismiss Plaintiffs' federal claim. The Court grants the motion, declines to exercise supplemental jurisdiction over the remaining state law claims, and dismisses this action such that Plaintiffs may file their state law claims in state court.

### I.       BACKGROUND

      On March 12, 2013, DHS released its 2012 Annual Report entitled Improving Outcomes for Children ("IOC Report") in hard copy and in digital format on its website. (Compl. ¶¶ 11-12.) The inside front cover of the IOC Report contains a full-length color photograph "prominently

displaying Zeyna with her son John Doe." (*Id*. ¶ 14.) Plaintiffs estimate that the photo is six to seven years old and that John Doe was eight to ten years of age at the time the photo was taken. (*Id*. ¶¶ 15-16.) Plaintiffs never signed a release or gave permission to use the photo nor do Plaintiffs know when the photo was taken or who took it. (*Id*. ¶¶ 17-18.) Indeed, DHS never contacted Plaintiffs prior to selecting or publishing the photo. (*Id*. ¶ 21.)

Plaintiffs have never received or applied for assistance or services from DHS. (*Id*. ¶ 22.) Soon after the IOC Report was published, Plaintiffs received emails, phone calls, and other communications about the photo and why it had appeared in the IOC Report. (*Id*. ¶ 24.) "Plaintiffs have also had questions directed at them as to their need for DHS services and the identity of John Doe with respect to his natural parents. As a direct result, John Doe has questioned his own identity and has even asked Zeyna and his father to submit to a paternity test." (*Id*. ¶¶ 25-26.) John Doe is also receiving counseling to address his concerns about his identity. (*Id*. ¶ 27.)

Plaintiffs requested removal of the photo from the IOC Report. (*Id*. ¶ 29.) Counsel for DHS informed Plaintiffs that the image had been removed from all electronic sources and that hard copies of the IOC Report with Plaintiffs' images were no longer being issued. (*Id*. ¶ 30.) There was nothing that DHS could do, however, about hard copies already released to the public. (*Id*.)

Count I of the Complaint, brought against DHS, Commissioner Ambrose, as well as unnamed DHS employees, is a § 1983 claim for violation of Plaintiffs' constitutional rights as a result of Defendants' policy and custom. Specifically, Plaintiffs allege that "Defendants developed and/or instituted procedures, policies, practices, or customs which tacitly endorsed and/or permitted employees of Defendant DHS, including the individual Defendants themselves, to publish photographs with deliberate indifference to the liberty interest in reputation afforded to those whose

images were selected." (*Id.* ¶ 36.) Counts II through V are state law claims for invasion of privacy and intentional infliction of emotional distress.[1]

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that

---

[1] Plaintiffs had previously filed a similar lawsuit in state court, which was removed to this District but proceeded before another judge. In that case, Defendants filed a motion to dismiss, and Plaintiffs thereafter voluntarily dismissed their claims on November 21, 2013. This case was filed in this Court on January 13, 2014.

pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id*.

### III.   DISCUSSION

Both Plaintiffs and Defendants treat the federal claim as a due process claim asserting a deprivation of Plaintiffs' liberty interest in reputation. Reputation alone is not an interest protected by the Constitution. *See Versage v. Twp. of Clinton, N.J.*, 984 F.2d 1359, 1371 (3d Cir. 1993); *see also Paul v. Davis*, 424 U.S. 693, 701–12 (1976). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). This is known as the "stigma-plus" test.

In order to satisfy the stigma prong of the "stigma-plus" test, a plaintiff must show that (1) the allegedly stigmatizing statement was made publicly; (2) the statement was substantially and materially false; and (3) the reputational harm was caused by the falsity of the statement. *Lockett v.*

*Pa. Dep't of Corrections*, 529 F. App'x 294, 296 (3d Cir. 2013). A stigmatizing statement is one that infringes upon the "reputation, honor, or integrity" of the plaintiff. *See Brown v. Montgomery Cnty.*, 470 F. App'x 87, 91 (3d Cir. 2011) (citing *Ersek v. Springfield*, 102 F.3d 79, 83–84 (3d Cir. 1996)).

Plaintiffs have alleged no facts that support a finding that any stigmatizing statement or picture was made here. They allege that DHS published a photo of them in a report without first seeking permission. That does not state a federal claim. Plaintiffs claim that the "full-length color photograph prominently displaying Zeyna and her son on the inside of the IOC report falsely suggests that they were recipients of services from Defendant when in fact they were not." (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss [Pls.' Br.] at 6.) Plaintiffs allege, and the Court must accept as true, that they received communications asking about their need for DHS services. (Compl. ¶¶ 24-25.) Assuming the veracity of the claim that a picture in a DHS report implies that those in the photo are recipients of DHS services, however, Plaintiffs have not stated a claim here. They cite no case law for the proposition that receiving DHS services is stigmatizing. The Court will not presume that any and all interactions with DHS are of a stigmatizing nature. The Court will also not presume that all who receive DHS services are stigmatizing by virtue of their need for services from DHS. Furthermore, a careful reading of the Complaint shows that Plaintiffs have failed to allege any reputational harm. At most, Rodriguez had to answer questions about the photo and answer questions from Plaintiff John Doe about his "own identity." (Compl. ¶¶ 26-27.) There are no allegations that Plaintiffs' reputation in the community has been diminished in any way by the implication that a photo of them may suggest that they receive services from DHS. Plaintiffs have failed to plausibly allege any damage to their reputation, honor, or integrity from the publication of the photo. Plaintiffs' allegations require too much of a legal leap to state a federal claim.

Plaintiffs' claim under § 1983 also fails because they cannot point to a "plus" that accompanies a stigma suffered. The "plus" requires "an alteration or extinguishment of 'a right or status previously recognized by state law.'" *Hill*, 455 F.3d at 237 (quoting *Paul*, 424 U.S. at 711). Plaintiffs assert that the "publication of Plaintiffs' photograph in the IOC report and the consequences and fallout therefrom, infringed upon their fundamental familial interest and family relationship." (Pls.' Br. at 6.)

Unquestionably, the parent/child relationship is an important one, and parents have a constitutionally protected right to control the upbringing of their minor children. *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see also Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights . . . to direct the education and upbringing of one's children."). Indeed, *Paul* recognizes that there are certain zones of privacy in which the states' power to regulate conduct is limited. *Paul*, 424 U.S. at 713. The allegations of this case, however, are far afield of improper state regulation upon a liberty or property interest protected by the Constitution. Plaintiffs have cited no cases to support their position—and the Court concludes that it is a stretch too far—that Defendants' publishing a photo in a government report is alone sufficient to invade Rodriguez's right to raise her child as she sees fit. Thus, Plaintiffs also fail the "plus" required by the "stigma plus" test.

The facts of *Paul v. Davis* are helpful here. Edgar Paul was the Chief of Police in Louisville, Kentucky. The police department distributed flyers warning approximately 800 merchants in the Louisville metropolitan area of possible shoplifters. The flyers stated that they were approved by the Chief of the City of Louisville Police Department. In the center of page two were photos and the

name of the respondent, Edward Charles Davis, III. Davis had been arrested in Louisville on a charge of shoplifting, but "upon his plea of not guilty, the charge had been filed away with leave (to reinstate)." *Paul*, 424 U.S. at 695-96. Accordingly, at the time that the flyer was distributed, the charge against Davis had not been adjudicated. Shortly after the flyer was circulated, the shoplifting charge was dismissed. At the time the flyer was distributed, Davis worked as a photographer at a newspaper. Although Davis was not fired, Davis's supervisor warned Davis not to place himself in a similar situation again. Davis claimed that his constitutional rights had been violated. Specifically, he claimed that being designated as a shoplifter would hurt his career prospects and left Davis in fear of being arrested again. The Supreme Court held that he had not stated a federal claim and it declined to turn a tort committed by an agent of the state into a federal claim. Furthermore, Davis's interest in his reputation was protected by state defamation law. The mere injury to Davis's reputation by an officer of Kentucky did not also deprive him of a liberty or property interest guaranteed by the Constitution. *Id.* at 712. Similarly, in this case, even assuming an injury to reputation, Defendants have not deprived Plaintiffs of any liberty or property interest guaranteed by the Constitution.

Finally, the bulk of Plaintiffs' Complaint consists of state law claims for invasion of privacy and intentional infliction of emotional distress. While Plaintiffs try to shoehorn such state law claims into a Constitutional claim, "[i]nvasion of privacy is a claim that arises under state law rather than federal law." *Hubi v. Nalty*, Civ. A. No. 10-3821, 2011 WL 2292808, at *2 (E.D. Pa. June 8, 2011); *see Rolax v. Whitman*, 53 F. App'x 635, 638 (3d Cir. 2002) ("An invasion of privacy claim is not a constitutional tort, however, but rather a creature of state law."). Thus, Plaintiffs are left with only state law claims and it would be futile to allow Plaintiffs to create a Constitutional claim out of state law causes of action. This litigation is in its early stages and the only federal claim is not viable.

Therefore, and pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350-51 (1988).

**IV.     CONCLUSION**

Perhaps Defendants committed a tort by using a photo of Plaintiffs without their permission. But that is not a federal case. The Court therefore grants Defendants' motion to dismiss the federal claim raised in the Complaint. The Court also declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims. Therefore, the case is dismissed. An Order consistent with this Memorandum will be docketed separately.